UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE M. JAQUEZ, | ) No. CV 07-01698 SS |
| Plaintiff, | ) |
| | ) **MEMORANDUM DECISION AND ORDER** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration | ) ) ) |
| Defendant. | ) |

Plaintiff Rosie M. Jaquez ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. This matter is before the Court on the parties' Joint Stipulation ("Jt. Stip."), filed on November 27, 2007. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

# I.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on May 5, 2003. (Administrative Record ("AR") 73). Plaintiff alleged that she is disabled due to forgetfulness, headaches, eye pain, depression, and hepatitis C. (AR 118). Plaintiff asserts a disability onset date of April 1, 1999. (AR 118).[1]

The Agency denied Plaintiff's claim for benefits initially and upon reconsideration. (See AR 33-36, 41-46). On April 24, 2006, Administrative Law Judge ("ALJ") Reite conducted a hearing by video teleconference to review Plaintiff's claims. (AR 953-1004). Plaintiff, who was represented by counsel, testified. (AR 965-99). Vocational expert ("VE") Sandra Trost also testified. (AR 999-1003). ALJ Reite denied benefits in a written decision dated July 25, 2006. (AR 13-20). Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 9). On January 24, 2007, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 5-7). Plaintiff commenced the instant action on March 22, 2007.

---

[1] Plaintiff previously filed an application for SSI on September 8, 1997, which was denied on November 4, 1997, an application for SSI on December 28, 2000, which was denied on May 25, 2001, and an application for both SSI and Disability Insurance Benefits on July 11, 2002, which was denied on October 31, 2002. (See AR 13). Plaintiff did not appeal those decisions, and Plaintiff's attorney agreed at the hearing that the instant application concerns only the period beginning from the protective filing date of April 23, 2003. (See AR 13, 964).

# II.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work that she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

3

  (3) Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

  (4) Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

  (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[3] age, education and work

---

[3] RFC is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

experience. Tackett, 180 F.3d at 1099-1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## III.
### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process discussed above. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (AR 19). At step two, the ALJ found that Plaintiff's depression, polysubstance abuse in alleged remission, and low back pain were severe impairments, and that Plaintiff's hepatitis C was a non-severe impairment. (AR 19). At step three, the ALJ ascertained that Plaintiff's impairments did not meet or equal a listing. (AR 19).

At step four, the ALJ found that Plaintiff's subjective complaints were "not fully credible." (AR 19). The ALJ assessed that Plaintiff had the RFC to perform light work with "a sit/stand option and moderate limitation in concentration, persistence and pace and mild limitation in social interaction with coworkers, supervisors and the public." (AR 19). The ALJ determined that Plaintiff was not capable of performing

her past relevant work. (AR 19). However, at step five, the ALJ determined that "based on the vocational expert testimony, claimant would be able to perform other work that exists in significant numbers in the national and regional economies, considering her age, education, past work, and RFC." (AR 19). Accordingly, the ALJ found that Plaintiff was not disabled. (AR 19).

## IV.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**V.**

**DISCUSSION**

Plaintiff contends that the Commissioner's decision should be overturned for three reasons. First, she claims that the ALJ did not properly consider the psychiatric evaluation conducted by Dr. Dhaliwal, the treating psychiatrist. (Jt. Stip. at 3-5). Second, she claims that the ALJ did not properly consider the functional status and global assessment of functioning score assessed by psychiatrist Dr. Tufail. (Id. at 12-13). Third, she claims that the ALJ did not properly consider the side effects of her medication. (Id. at 15-17). As set forth below, the Court disagrees with Plaintiff's contentions and instead finds that the ALJ's decision should be affirmed.

**A.   Plaintiff's Claim That The ALJ Improperly Considered the Treating Psychiatrist's Opinion Does Not Warrant Remand**

Plaintiff contends that the ALJ "improperly rejected" the opinion of Dr. Gurjit Dhaliwal, a psychiatrist at Tri-City Mental Health, as represented in a "Short-Form Evaluation for Mental Disorders" that Dr. Dhaliwal completed and submitted on August 11, 2004, in connection with Plaintiff's social security application.[4]  (Jt. Stip. at 4; AR 480-83).

---

[4]   The Agency questions whether the form evaluation accurately represents Dr. Dhaliwal's opinion, given that the record reflects the form was largely filled out by Kristie Cargill, a Tri-City social worker.  (See Jt. Stip. at 5, citing AR 577). This Court need not consider that issue because even assuming the evaluation constitutes Dr. Dhaliwal's opinion, the ALJ's evaluation of the opinion was supported by substantial evidence.

It is well-established that "[b]y rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). See also Aukland v. Massanari, 257 F.3d 1033, 1037 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). A treating physician's opinion as to the nature and severity of an impairment must be given controlling weight if the opinion is well supported and not inconsistent with other substantial evidence. SSR 96-2p; Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001). Where the treating physician's opinion is contradicted by other medical evidence in the record, that opinion is entitled to deference unless there are specific and legitimate reasons, supported by substantial evidence in the record, for its rejection. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). As explained below, to the extent that the ALJ rejected Dr. Dhaliwal's evaluation, his reasons for doing so were supported by the record.

In his evaluation, Dr. Dhaliwal diagnosed Plaintiff with major depressive disorder. (AR 480). After first noting that Plaintiff's appearance and behavior, motor activity, speech, and interview behavior were all unremarkable, with no behavioral disturbances, (AR 480), Dr. Dhaliwal noted that Plaintiff's memory was "impaired" and her concentration "distracted," and that her mood was "anxious" and "tearful." (AR 481). Dr. Dhaliwal then noted that Plaintiff had auditory and visual hallucinations, (AR 481), that she suffered from delusions of persecution, and that she was preoccupied with obsessions, compulsions, and suicidal thoughts. (AR 482). Finally, in a checklist, Dr. Dhaliwal indicated that Plaintiff's ability to understand, remember,

8

and carry out instructions was poor, but nevertheless noted that she was capable of managing her own funds. (AR 483).

In his decision, the ALJ summarized Dr. Dhaliwal's evaluation. (AR 16). The ALJ also noted the psychiatric reports contained in the record from Dr. Norma Aguilar and from Dr. Louis Fontana, state agency psychiatric consultative examiners. (AR 14-15). In a report dated March 24, 2001, Dr. Aguilar noted Plaintiff's claims that she had been forgetful and suffered from hearing loss in her right ear since a bus accident in 1997, but that she denied feeling depressed or suicidal, or experiencing hallucinations or delusions. (AR 192). Dr. Aguilar reported that Plaintiff's mood was slightly depressed and her affect slightly constricted, but concluded that she had the ability to follow and understand simple and complete to complex oral and written instructions. (AR 193-94).

In a report dated August 22, 2003, Dr. Fontana noted Plaintiff's claim that she had been depressed for approximately four years. (AR 464). Plaintiff denied any suicidal ideation, although Dr. Fontana noted an apparent previous suicide attempt in 1975. (AR 465). Dr. Fontana reported that Plaintiff's mood was "somewhat dysphoric," and her affect "full and appropriate, with some tearfulness." (AR 466). Dr. Fontana found "no evidence of hallucinations or delusions." (AR 466). In a subsequent evaluation conducted on August 13, 2004, (thus, two days after Dr. Dhaliwal's evaluation was submitted), Dr. Fontana noted that Plaintiff's concentration was normal, and that she denied any current suicidal ideation. (AR 491). Dr. Fontana again reported that Plaintiff's mood was somewhat dysphoric and her affect full and

appropriate. (AR 492). He noted that her thought processes were "somewhat disconnected and tangential, but able to be re-directed." (AR 492). Dr. Fontana reported no evidence of hallucinations or delusions. (AR 492). He concluded that she could not manage her own funds, based on her history of substance abuse, but that she should be able to perform simple and repetitive tasks. (AR 493).

The ALJ also noted that Plaintiff testified at the April 24, 2006 hearing that she experienced auditory hallucinations "3-4 times a month," and had thought about suicide two weeks before the hearing. (AR 17). As noted above, the ALJ determined that Plaintiff's depression was a severe impairment, in accordance with Dr. Dhaliwal's diagnosis, (AR 480), but in contrast to Dr. Fontana, who ruled out depressive disorder. (AR 467). In assessing Plaintiff's RFC, the ALJ incorporated a moderate limitation in concentration, persistence and pace, and a mild limitation in social interaction, again more closely reflecting Dr. Dhaliwal's opinion, (AR 483), than that of Dr Fontana. (AR 467, 493). Nevertheless, the ALJ expressly credited the consultative examinations because they provided the "most comprehensive evaluations and medical source statements, during the relevant period," and gave "less weight" to Dr. Dhaliwal's evaluation "because it appears to be based mainly on [Plaintiff]'s subjective complaints." (AR 18).

Although the ALJ directly offered this reason, that the opinion was based upon Plaintiff's subjective complaints, for discounting Dr. Dhaliwal's opinion, it is clear in context that he also discounted Dr. Dhaliwal's opinion because Dr. Fontana (and Dr. Aguilar)'s reports were more comprehensive and, by implication, Dr. Dhaliwal's was less

10

comprehensive. (See AR 18). Each of these reasons is specific and legitimate. "Where the opinion of a claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings . . . the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); see also Morgan v. Comm'r, 169 F.3d 595, 601 (9th Cir. 1999)("Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of" ALJ). Moreover, it is not clear that the ALJ truly rejected Dr. Dhaliwal's opinion but instead incorporated some of Dr. Dhaliwal's limitations into his RFC determination.

Dr. Dhaliwal's evaluation, consisting of a pre-prepared checklist form, and unaccompanied by any treatment notes, independent observations, or clinical findings, is entitled to less weight generally. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); see also Batson v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings."). Finally, to the extent that Dr. Dhaliwal's findings were premised upon Plaintiff's own subjective complaints, (see, e.g., AR 481), the ALJ properly disregarded those findings when he discounted Plaintiff's credibility, (AR 18), a determination that Plaintiff has not challenged in this action. See Morgan, 169 F.3d at 602 (affirming ALJ's rejection of treating physicians' unsupported and inconsistent opinions that relied on claimant's own testimony). This claim does not warrant remand.

B.  **Plaintiff's Claim That the ALJ Failed to Discuss the Functional Status Opinion of Her Treating Psychiatrist Does Not Warrant Remand**

Plaintiff complains that the ALJ ignored the functional status opinion of Dr. K. Tufail, a psychiatrist at Tri-City Mental Health. (Jt. Stip. At 12-13). In particular, Plaintiff contends that the ALJ's failure to discuss the global assessment of functioning[5] ("GAF") score of 46 assigned by Dr. Tufail, without providing specific and legitimate reasons for doing so, requires remand. The Court disagrees.

The records of Dr. Tufail's treatment begin in June 2001, almost two years prior to April 23, 2003, the period at issue in the instant application. (See AR 13, 941, 964). On June 15, 2001, Dr. Tufail performed a mental status evaluation of Plaintiff, assigning her a GAF score of 46,[6] and diagnosing major depressive disorder with psychosis.

---

[5] A GAF rating provides a rough estimate of an individual's psychological, social and occupational functioning and is used to reflect the individual's need for treatment. Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998); see also American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000).

[6] GAF ratings range from 0 to 100. A rating of 41-50 denotes serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A rating of 51-60 denotes moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). A rating of 61-70 denotes some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well and maintaining some meaningful interpersonal relationships.
Each ten-point range encompasses both symptom severity and level of

(AR 941). The examination appears to have taken place on the first day that Dr. Tufail met with Plaintiff, and approximately one month after Plaintiff began treatment at Tri-City on May 9, 2001. (AR 951). Dr. Tufail's opinion thus falls outside the relevant period and within a period for which a prior benefits application was denied without further appeal. (See AR 13, 69-71). The ALJ properly focused his evaluation on the evidence from the period in which Plaintiff claimed her disability. See 20 C.F.R. §§ 404.1512(c), 416.912(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is <u>during the time you say that you are disabled</u>. You must provide evidence . . . showing how your impairment(s) affects your functioning <u>during the time you say that you are disabled</u> . . . .") (emphasis added); cf. Lombardo v. Schweiker, 749 F.2d 565, 567 (9th Cir. 1984) (per curiam) (holding ALJ entitled to discount examination one and a half years after relevant time period for remoteness); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996) (according less weight to examination after relevant time period than one during it).

Nevertheless, Plaintiff argues that the GAF score of June 2001 "reinforce[s] the fact that [she] has suffered from a significant and longitudinal history of a mental impairment resulting in functional limitations." (Jt. Stip. at 15). Assuming, without deciding, that the score has some bearing on the relevant time period, the ALJ provided

---

functioning. In situations where these components are discordant, the GAF rating reflects the lower of the two. For example, the GAF rating for an individual who presents a significant danger to herself but who otherwise functions normally would be below 20. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 32-34 (4th ed., text rev. 2000).

13

specific and legitimate reasons supported by substantial evidence in the record for rejecting it. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

In his decision, the ALJ discussed the treatment notes from Tri-City Mental Health for the period from May 2001 to March 15, 2006, but noted that the notes "mostly describe[] her subjective complaints . . . There is very little objective evidence to support her claims. She has had no psychiatric hospitalizations." (AR 18). Additionally, as noted above, the ALJ properly relied upon the evaluations of the state agency psychiatrists. (AR 18). Dr. Aguilar, who conducted an examination on March 24, 2001, three months before Dr. Tufail's evaluation, assigned a GAF score of 65-68. (AR 194). Subsequent evaluations conducted by Dr. Fontana in 2003 and 2004, and thus after Plaintiff had been receiving mental health treatment at Tri-City for some time, assessed GAF scores of 55 and 61. (AR 467, 493). Thus, Dr. Tufail's evaluation was directly contradicted by substantial evidence in the record, and it was for the ALJ to resolve the conflict. Andrews, 53 F.3d at 1041.

Moreover, GAF ratings are not dispositive in social security cases. See 65 Fed. Reg. 50746, 50765 (August 21, 2000) (GAF ratings are not directly correlative to Social Security severity assessments). A GAF rating is only intended to be used to plan treatment and measure its impact. See DSM-IV at 32. A person's GAF rating will fluctuate from week to week, rendering a two-year old rating meaningless. See id. at 33. The ALJ's failure to reference the GAF rating in his decision or in the RFC assessment thus does not, by itself, make the assessment

inaccurate. See Howard v. Comm'r, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); see also England v. Astrue, 490 F.3d 1017, 1023 & n.8 (8th Cir. 2007) (upholding ALJ's finding that GAF rating was "not a particularly illuminating measure of [the claimant's] functioning in specific domains").

In sum, the ALJ's opinion did not err by failing to directly address Dr. Tufail's initial evaluation of Plaintiff. Accordingly, Plaintiff's claim does not warrant remand.

C.  **The ALJ Did Not Err by Declining to Discuss the Alleged Side Effects of Plaintiff's Medication**

Plaintiff also contends that the ALJ erred by not discussing the side effects of various medications she was taking, namely, that "all of these medications make her feel drowsy." (Jt. Stip. at 15-16). In support of her argument Plaintiff cites two Disability Reports, dated July 11, 2002 and May 1, 2003, in which she stated that she was taking Zypreza, Paxil, Doxepin, Coleva, and Ibuprofen, which she claimed make her drowsy. (AR 111, 123). Plaintiff additionally cites medical sources to support her claim that these medications may cause drowsiness. (Jt. Stip. at 16).

The "type, dosage, effectiveness, and side effects" of any

medication taken by the claimant to alleviate his or her pain or other symptoms are factors relevant to a disability determination and should be considered by the ALJ. 20 C.F.R. § 404.1529(c)(3)(iv); see also Social Security Ruling ("SSR") 96-8p, available at, 1996 WL 374184. However, a claimant bears the burden of proving that an impairment, including a medication's side effects, is disabling. Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (upholding the ALJ's rejection of the plaintiff's statements that her medications affected her concentration and made her dizzy where no objective evidence was put forth and the ALJ properly found her testimony was generally not credible). Plaintiff has not met her burden in this case.

First, the record directly belies some of Plaintiff's claims. Although she identifies drowsiness as the sole side-effect allegedly caused by these medications, Plaintiff herself noted that she was prescribed Zyprexa and Doxepin to help her sleep, meaning that drowsiness would be an expected effect, not a side-effect. (AR 111). Additionally, Plaintiff did not state that Effexor made her drowsy. (See AR 123). Nor does Plaintiff contend that drowsiness is a potential side-effect of Ibuprofen. (See Jt. Stip. at 16). Thus, the only medications that might be linked to the unanticipated side-effects Plaintiff complains of are Paxil and Coleva. Yet even with respect to these medications, Plaintiff did not testify at the hearing that they made her drowsy; indeed, she did not include these in her testimony of

16

medications she was currently taking at all. (AR 993-94). Plaintiff did testify, however, that her hepatitis C condition "gets me tired." (AR 978). Plaintiff does not address whether her acknowledged occasional use of marijuana, (AR 491), may itself have caused the drowsiness she complains of here.

Plaintiff has not demonstrated with any reference to her treatment records that she experienced drowsiness from taking these medications. Indeed, Tri-City treatment records reflect that Plaintiff <u>denied</u> experiencing any medication side effects on a number of occasions between April 24, 2003 and December 13, 2004. (AR 555, 568, 583, 599, 603, 616, 637, 696, 727, 745, 761, 767). The only pertinent remark is in Plaintiff's application for benefits where she notes that these medications make her "drowsy," but she does not specify the extent or the frequency of such drowsiness. (AR 111). In her briefing before this Court, she also submitted general descriptions of the possible side effects of these medications. (Jt. Stip. at 16). These descriptions do not, however, indicate the actual effects they had on Plaintiff.

The claimed side effects, unsupported by medical evidence, were no more than additional subjective complaint testimony, the value of which was discounted by the ALJ in his credibility analysis, an analysis which Plaintiff has not challenged in this action. See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (finding no error in excluding side-effects where the only evidence was claimant's testimony, and where the ALJ had found the claimant not credible).

Accordingly, Plaintiff has simply failed to put forth clinical

17

evidence showing how the alleged drowsiness has affected her ability to sustain employment, and she has, thus, failed to meet his burden of proving that this side effects were disabling.  <u>See</u> <u>Miller</u>, 770 F.2d at 849 (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work); <u>see also</u> <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164 (9th Cir. 2001) (finding no substantial evidence of impairment from side effects where the record contained "passing mentions of the side effects of [claimant's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [claimant's] ability to work").  For the above reasons, this claim does not warrant remand.

## VI.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: March 10, 2008.                          /s/

                                    _____
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE